Walton Haggerty v. The State of Texas















IN THE
TENTH COURT OF APPEALS
 

No. 10-99-292-CR

     WALTON HAGGERTY,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the 195th District Court
Dallas County, Texas
Trial Court # F98-00415-N
                                                                                                                
                                                                                                            
MEMORANDUM OPINION
                                                                                                                
   
      Walton Haggerty pleaded guilty to aggravated sexual assault of a child. See Tex. Pen.
Code Ann. § 22.021(a)(1)(B)(ii), (2)(B) (Vernon Supp. 2000). Pursuant to a plea agreement,
the court placed Haggerty on unadjudicated community supervision for five years. Thereafter,
the State filed a motion to adjudicate Haggerty’s guilt. He pleaded true to the allegations of
the motion, and the court adjudicated him guilty of aggravated sexual assault and sentenced
him to fifteen years’ imprisonment and a $500 fine. Haggerty filed a general notice of appeal.
      An appellant who has pleaded guilty in exchange for unadjudicated community supervision
must comply with appellate rule 25.2(b)(3) when he seeks to appeal a subsequent adjudication
and sentencing. Tressler v. State, 986 S.W.2d 381, 382 (Tex. App.—Waco 1999, no pet.);
see also Manuel v. State, 994 S.W.2d 658, 662 (Tex. Crim. App. 1999) (applying former
appellate rule 40(b)(1)). Haggerty’s general notice of appeal does not comply with this rule. 
We notified him of this defect by letter dated January 11, 2000. See Tex. R. App. P. 25.2(d). 
He has not responded to our letter by filing an amended notice of appeal in compliance with
rule 25.2(b)(3).
      Because Haggerty’s notice of appeal does not comply with rule 25.2(b)(3), we do not have
jurisdiction over this appeal. Tressler, 986 S.W.2d at 382; see also Manuel, 994 S.W.2d at
662. Accordingly, we dismiss this appeal for want of jurisdiction.


                                                                               PER CURIAM

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Appeal dismissed
Opinion delivered and filed February 9, 2000
Do not publish



this point Appellant was wearing only a pair of underwear
which Sherretha described as "black polka dots and like a leopard." Sherretha testified that
Appellant tried to slide her panties aside and that "he had his penis out and was trying to put his
penis in me." Sherretha felt Appellant's penis rub against her vagina, whereupon, she kicked him
in the groin area and ran out of the room. Sherretha stood outside Appellant's house but, since
it was dark and she "didn't know nobody out there," she went back into Appellant's house. 
Appellant asked Sherretha to swear not to tell anybody what happened. After she promised not
to tell, Appellant did not touch her again. Appellant refused to let Sherretha call her parents,
however, and warned her that the telephone in the house belonged to his friend and that no one
could use it without permission. Sherretha slept on the couch for the rest of the evening.
      Meanwhile, Sherretha's parents began to worry about their daughter. Her parents called
Appellant's house twice, only to be told that Sherretha was busy visiting and did not want to talk
to them. Elva (Sherretha's mother) testified that "after the third phone call I made, I knew then
that it was—something wasn't right." Elva did not know the address of Appellant's house and she
tried to reach other family members in an attempt to locate Appellant. Since Elva was unable to
find her daughter, she did not sleep that night. Appellant called Elva the next morning and asked
if he could take Sherretha shopping. Elva said no. An hour later, Appellant and some of his
friends dropped Sherretha off at her house. Appellant did not get out of the car or speak with
either parent. Sherretha looked scared. John Paul testified that he saw his daughter crying as she
went to the back yard to speak privately with her mother. Elva testified that after she told
Sherretha to take a shower and get ready to go to a barbecue, Sherretha started screaming and was
greatly upset. Sherretha asked her mother, who had been raped as a child, "what it was like for
somebody to try to rape you."
      At this point Elva immediately went to get her husband. Then Elva and John Paul called the
police who interviewed Sherretha and subjected her to a rape exam.
      Kenneth Walker, the Garland Police Department Crisis Counselor, interviewed Sherretha and
testified that she was very upset and embarrassed about the molestation. When she got home she
refused to sleep in her room because Appellant had casually lain down on her bed during his visit
to the home.
      Appellant in his defense put on the stand his brother-in-law, mother and father, none of whom
had any personal knowledge of the events on June 18, 1994. Appellant's only defense at trial was
his alleged homosexuality. Appellant's brother-in-law, Isiah Mattox, testified that Appellant is
gay and very effeminate. He characterized Appellant as a "wrist-flipper." Shirley Donahue,
Appellant's sister, testified that her brother is "real gay" and he "don't like women--he likes men." 
Appellant's parents testified that Appellant was gay and they had never seen him with a woman.
      Appellant asserts in his sole point of error that the evidence is factually insufficient to support
his conviction for aggravated sexual assault. More specifically, he attacks the credibility of
Sherretha and the lack of corroborating physical evidence. In addition, he asserts that testimony
concerning his homosexuality somehow precluded a finding that Appellant had molested his
twelve-year-old niece.
      We do not believe in the validity of either of these arguments. A rational juror could have
reasonably concluded that Appellant sexually assaulted his niece despite his sexual orientation. 
Moreover, the credibility of a witness is not a proper basis for a factual sufficiency complaint on
appeal.
      The proper standard of review of the elements of the offense is that the court of appeals views
all the evidence without the prism of "in the light most favorable to the prosecution" and sets aside
the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); Stone v. State,
823 S.W.2d 375, 381 (Tex. App.—Austin 1992, pet. ref'd), untimely filed. A factual sufficiency
review begins with the presumption that the evidence supporting the jury's verdict is legally
sufficient, that is to say, constitutionally sufficient for the Due Process Clause of the Fourteenth
Amendment to the federal constitution. Because the court is not bound to view the evidence in
the light most favorable to the prosecution, it may consider the testimony of defense witnesses and
existence of alternate hypotheses. The court should set aside the verdict only if it is so contrary
to the overwhelming weight of the evidence as to be clearly wrong and unjust. Stone, supra.
      Under the Clewis test we hold the evidence to be factually sufficient to sustain Appellant's 
conviction. 
      Appellant's point is overruled. The judgment is affirmed.
 
                                                                               JOHN A. JAMES, JR.
                                                                               Justice (Retired)

Before Justice Cummings,
      Justice Vance and
      Justice James (Retired)
Affirmed
Opinion delivered and filed February 25, 1998
Do not publish